**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DARRYL V. CONQUEST,  :  |  |
|  : | Civil Action No. 07-2125 (MLC) |
| Plaintiff,  : |  |
|  : |  |
| v.  : | **O P I N I O N** |
|  : |  |
| GREG HAYMAN, et al.,  : |  |
|  : |  |
| Defendants.  : |  |

**APPEARANCES:**

    DARRYL V. CONQUEST, Plaintiff Pro Se, # 58068 SBI # 0130874B
    New Jersey State Prison, P.O. Box 861, Trenton, New Jersey

**COOPER**, District Judge

    Plaintiff, Darryl V. Conquest, who is confined at the New Jersey State Prison ("NJSP"), seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, for violations of constitutional rights. He initially submitted the Complaint without a complete application to proceed in forma pauperis ("IFP"). On May 14, 2007, this Court issued an Order denying the IFP application without prejudice, and administratively terminating the action. The Order granted Conquest leave to submit a complete IFP application with a prison account statement and an affidavit of indigency if he wished to re-open the case.

    Conquest has now paid the $350 filing fee. Therefore, the Court must review the Complaint at this preliminary juncture, pursuant to 28 U.S.C. § 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim

upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint insofar as it asserts (1) an Eighth Amendment claim and a Fourteenth Amendment equal protection claim will be dismissed, and (2) a Fourteenth Amendment due process claim will proceed.

## BACKGROUND

Conquest has been assigned to the Management Control Unit ("MCU") for the past twelve years.  He claims that his rights have been violated because the defendants have denied him an annual review, which would allow him to be moved back into the general prison population.  He essentially seeks return to the general prison population.  The named defendants are:  Greg Hayman, Commissioner of the New Jersey Department of Corrections ("NJDOC"); Michelle R. Ricci, Associate Administrator at NJSP; Donald Mee, Assistant Administrator at NJSP and Chairman of the MCU Review Committee ("MCURC"); Alfred Kandall, Assistant Superintendent at NJSP and voting member of the MCURC; Captain Ortiz, NJSP custody representative and voting member of the MCURC; Dr. Dena Farber, psychologist at NJSP and voting member of the MCURC; and Lt. Jones, NJSP custody representative and voting member of the MCURC.

Conquest specifically alleges that defendants have conducted a ruse and misled him about his annual review.  On February 27,

2007, he received a 90-day routine review in-person before MCURC members, Kandall, Ortiz and Farber.  On March 6, 2007, the MCURC delivered Conquest its decision to continue his MCU placement.  Conquest administratively appealed the decision.  Ricci affirmed the MCURC's decision and noted that Conquest's request for an annual review would be conducted as soon as possible.

On April 3, 2007, Conquest received a written Notice of Decision of an Annual Review Hearing from the MCURC.  He contends that he did not attend the "bogus" hearing, and thus was unable to present any evidence or testimony to support his request for removal from the MCU.  Conquest further states that the MCURC decision erroneously reports that he had the opportunity to present evidence.  Conquest also notes that the hearing does not comport with state law, i.e., N.J.S.A. § 10A:5-2.11.

Conquest contends that he is eligible for release from the MCU.  He claims that he has not had any disciplinary or other institutional infractions for the past ten years.  He also has completed behavior modification and anger management programs, as well as a third program called "Cage the Rage" in which he received a certificate of completion.

Conquest seeks injunctive relief, i.e., a meaningful annual review, and a declaration that the defendants have violated his constitutional rights under the Eighth and Fourteenth Amendments.  He also seeks to be released into the general prison population

and have his institutional classification record show his positive program completions.  Finally, he seeks monetary damages in the amount of $100,000 and $25 per day for each day that he remains in the MCU.

## STANDARDS FOR A SUA SPONTE DISMISSAL

A district court must review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court must identify cognizable claims and sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

In examining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319,

325 (1989) (interpreting predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  But where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004) (complaint that satisfied notice pleading requirement that it contain short, plain statement of claim but lacked sufficient detail to function as guide to discovery was not required to be dismissed for failure to state claim; district court should permit curative amendment before dismissing complaint, unless amendment would be futile or inequitable); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dep't, 91 F.3d 451, 453 (3d Cir. 1996).

**SECTION 1983 ACTIONS**

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege (1) the violation of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**ANALYSIS**

**I.   Fourteenth Amendment Due Process Claim**

No "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To analyze a procedural due process claim, the first step is to decide whether the person was deprived of a liberty or property interest protected by due process. See Fuentes v. Shevin, 407 U.S. 67 (1972). Only if the answer is yes, is the second step, determining what process is due, necessary. See Morrissey v. Brewer, 408 U.S. 471 (1972).

Liberty interests protected by the Due Process Clause of the Fourteenth Amendment may arise under that clause itself or be created by mandatory language in state statutes or regulations. See Sandin v. Conner, 515 U.S. 472, 483-484 (1995). But "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." Id. at 478. "As long as the conditions or degree of confinement

to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976); see Vitek v. Jones, 445 U.S. 480, 493 (1980). An inmate such as Conquest has no liberty interest arising by force of the Due Process Clause itself in remaining in the general population. See Montanye, 427 U.S. at 242; Torres v. Fauver, 292 F.3d 141, 150 (3d Cir. 2002).

An inmate does not possess a liberty interest arising from the Due Process Clause in assignment to a particular custody level or security classification or a place of confinement. See Wilkinson v. Austin, 545 U.S. 209, 125 S.Ct. 2384, 2393 (2005) (Constitution does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montayne, 427 U.S. at 243; Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976). Moreover, the custody placement or classification of state prisoners within the State prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." Meachum, 427 U.S. at 225.

But a state may create a protected liberty interest through a statute or regulation requiring placement in general population

under certain circumstances.[1]  See Sandin, 515 U.S. at 483-84. The Sandin Court held that "mandatory language in a state law or regulation can create a protected liberty interest only if the alleged deprivation 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Torres v. Fauver, 292 F.3d 141, 151 (3d Cir. 2002) (quoting Sandin, 515 U.S. at 484).  But "confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002); see Fraise v. Terhune, 283 F.3d 506, 522-523 (3d Cir. 2002) (New Jersey prisoners have no protected liberty interest in being free of indefinite segregated confinement in Security Threat Group Management Unit).

---

[1] New Jersey regulations do not require placement in general population.  Rather regulations require officials to place an inmate in MCU under certain circumstances:
> (a) An inmate shall be assigned to the M.C.U. when the [committee], after considering the criteria in N.J.A.C. 10A:5-2.4, concludes that the inmate poses a substantial threat:
>> 1. To the safety of others;
>> 2. Of damage to or destruction of property; or
>> 3. Of interrupting the operation of a State correctional facility.
>
> (b) Procedures for [committee] hearings described in N.J.A.C. 10A:5-2.6 shall be followed and completed prior to placement in M.C.U.
> (c) If there is a need for immediate placement in the M.C.U., such placement shall be made in accordance with N.J.A.C. 10A:5-2.8.

N.J.A.C. § 10A:5-2.5.

New Jersey regulations here provide for an annual review of inmate status in the MCU, N.J.A.C. § 10A:5-2.11; as well as a formal review of each inmate in the MCU every three months, N.J.A.C. § 10A:5-2.10. "The inmate shall be permitted to appear at all reviews of the inmate's case unless doing so would be unduly hazardous to the safety and security of the correctional facility, or the inmate refuses to appear." N.J.A.C. § 10A:5-2.10(c).

Conquest admits that he received a periodic review hearing as to his status in the MCU, and was able to appeal that decision. However, he contends that his annual review hearing was a sham and was held without giving him the opportunity to appear and present evidence supporting his transfer from the restrictive environment at MCU, where he has been assigned for more than ten years. More egregious, the hearing decision erroneously states that Conquest was present, suggesting that the hearing was fabricated.

Conquest further maintains that given the opportunity, he can show that his release to the general prison population is warranted. He notes that he has completed behavior modification and anger management programs, as well as a third program called "Cage the Rage" in which he received a certificate of completion. Furthermore, Conquest has not had any disciplinary or other institutional infractions for the past ten years.

It would appear that Conquest is alleging that his very lengthy confinement in the MCU without the prospect for release may very well amount to an "atypical and significant hardship in relation to the ordinary incidents of prison life," implicating a liberty interest under the Due Process Clause.  See Shoats v. Horn, 213 F.3d 140, 143-44 (3d Cir. 2000).  If true, the question then becomes what process a prison setting requires.  Such process must include the prisoner's opportunity to present his views to the prison official charged with deciding whether to retain him in such restrictive environment.  See id. at 145-46.

As Conquest has alleged that MCURC review process is a sham, and his annual review hearing occurred without his attendance (which New Jersey regulation seems to require unless the inmate refuses to attend) and without an opportunity to for him to show his prison program completions and lack of disciplinary infractions for twelve years, this Court finds that Conquest may have alleged facts sufficient at this time, if true, to implicate a due process violation.  Accordingly, this Court will allow this claim to proceed at this preliminary screening stage.

**II.  Eighth Amendment Claim**

The Complaint also may be construed as asserting an Eighth Amendment conditions claim based on Conquest's ten years in the MCU, a more restrictive prison unit.  The Constitution "does not mandate comfortable prisons."  Rhodes v. Chapman, 452 U.S. 337,

10

349 (1981). But it does not permit inhumane ones, and "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). The Eighth Amendment imposes a duty to provide humane conditions of confinement and take reasonable measures to guarantee inmate safety. Hudson v. Palmer, 468 U.S. 517, 526-527 (1984); Helling, 509 U.S. at 31-32; Washington v. Harper, 494 U.S. 210, 225 (1990).

The Eighth Amendment prohibits conditions that unnecessarily and wantonly inflict pain, or are grossly disproportionate to the severity of the crime warranting imprisonment. Rhodes, 452 U.S. at 346-47. The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society." Id. at 346. "[I]t is well settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994). To determine whether the conditions of confinement violate the Eighth Amendment, the courts employ a test that includes objective and subjective elements, both of which must be satisfied by a plaintiff. See Counterman v. Warren County Corr. Fac., 176 Fed.Appx. 234, 238 (3d Cir. 2006) (citing Beers-Capitol v. Whetzel, 256 F.3d 120, 131 (3d Cir. 2001)).

A prisoner may satisfy the objective element of a conditions-of-confinement claim — that a deprivation be

11

"sufficiently serious" — by showing that the conditions alleged, either "alone or in combination, . . . deprive him of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. at 347-48. Such necessities include: "adequate food, clothing, shelter, sanitation, medical care, and personal safety." Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992).

Conquest does not allege that housing at the MCU deprives him of adequate food, clothing, shelter, sanitation, medical care, and personal safety. Therefore, his housing at the MCU does not deprive him of the minimal civilized measure of life's necessities and cannot provide valid grounds for an Eighth Amendment claim.

### III. Equal Protection Claim

Conquest asserts a general claim that his right to equal protection has been violated. The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated must be treated alike. City of Cleburne, Tx. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); Artway v. Att'y Gen., 81 F.3d 1235, 1267 (3d Cir. 1996). Despite its sweeping language, "[t]he Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating

differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).

Proof of disparate impact alone, however, is not sufficient to succeed on an equal protection claim; a plaintiff also must prove that the defendant intended to discriminate. Vill. of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 264-66 (1977). Thus, discriminatory intent must be a motivating factor in the decision, but it need not be the sole motivating factor. Vill. of Arlington Heights, 429 U.S. at 265-66.

The Court finds that Conquest has failed to articulate an equal protection violation. Conquest has not alleged that he was singled out for discriminatory treatment different from other similarly situated prisoners in the MCU. Moreover, inmates are not members of a suspect class. See Myrie v. Comm'r, N.J. Dep't of Corrs., 267 F.3d 251, 263 (3d Cir. 2001) (noting inmates, as class, do not constitute "discrete and insular" minority); Abdul-Akbar v. McKelvie, 239 F.3d 307 (3d Cir. 2001). Therefore, this Court concludes that Conquest has failed to demonstrate any equal protection violation and this claim will be dismissed pursuant to 28 U.S.C. § 1915A(b)(i) for failure to state a claim upon which relief may be granted.

## CONCLUSION

For the reasons expressed above, the Court will dismiss the Fourteenth Amendment equal protection claim and Eighth Amendment

claim, as against all defendants, because they fail to state a cognizable claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915A(b)(1). But the Court will allow the Fourteenth Amendment due process claim to proceed at this time. An appropriate Order follows.

                                                     s/ Mary L. Cooper
                                                    **MARY L. COOPER**
                                                    United States District Judge

**Dated:**    October 17, 2007